In the Matter of **WRITING SALES LIMITED PARTNERSHIP, Debtor.**

**WRITING SALES LIMITED PARTNERSHIP, Plaintiff,**

v.

**CARDINAL PRODUCTS, DIVISION OF JOSTENS BUSINESS PRODUCTS, INC., Defendant.**

Bankruptcy No. 85–02591.
Adv. No. 86–0187.

United States Bankruptcy Court, E.D. Wisconsin.

Jan. 10, 1989.

See also, Bkrtcy., 96 B.R. 175.

Robert L. Mann, Kohner, Mann & Kailas, S.C., Milwaukee, Wis., for plaintiff.

Ariel Weissberg, Weissberg & Henry, Ltd., Chicago, Ill., for defendant.

## MEMORANDUM DECISION

C.N. CLEVERT, Chief Judge.

Writing Sales Limited Partnership brought this adversary proceeding to recover five alleged preferential payments it made to Cardinal Products within 90 days of filing its voluntary Chapter 11 petition. Although Cardinal acknowledges receipt of payments totalling $24,663.13, including an admittedly preferential payment of $53.76, it argues that the payments were not in satisfaction of antecedent debts. Cardinal affirmatively alleges that the payments were made in the ordinary course of business thereby excepting them from recovery as preferences.

## FACTS

Cardinal Products was one of as many as 200 suppliers from whom Writing Sales

purchased goods in its office products business starting in 1981. The day after shipping merchandise to its customers, Cardinal routinely prepared invoices stating "net on presentation." Writing Sales believed that this meant that payment for invoiced items was due immediately, even though it never paid Cardinal within invoice terms. Instead, the bulk of Writing Sales' invoices was paid between 31 and 60 days after issuance.

One Writing Sales' location paid bills an average of 70 days after invoice whereas the other two locations paid an average of 51 days after invoice. According to Cardinal's records, other wholesale customers usually paid their invoices between 30 and 80 days after the invoice date.

In January of 1985, Cardinal agreed to give Writing Sales 60 days to pay for a large purchase which was used to stock newly acquired facilities in St. Louis and Kansas City. As a result, Cardinal shipped merchandise to St. Louis and Kansas City on January 9 and issued invoices on January 10 for $4,603.56 and $3,687.84 which were payable in 60 days. These invoices were reissued February 28, 1985, for internal purposes.

The first invoice was paid on May 13, 1985, and the second on May 9, 1985. These payments were among the five at issue, totalling $24,663.13, made to Cardinal within 90 days of Writing Sales' Chapter 11 filing.

The following check and invoice data was stipulated to by the parties:

| Exhibit No. | Date of Payment | Date of Invoice | Number of Days Between Invoice | Amount of Invoice [1] |
|---|---|---|---|---|
| 6 | 5/13/85 | 2/26/85 | 77 | $6,174.93 |
| 7 | 5/09/85 | 1/10/85 reinvoiced 2/28/85 | 70 | 3,687.84 |
| | | 2/25/88 | 73 | 181.68 |
| | | 2/26/85 | 72 | 134.76 |
| | | 3/18/85 | 50 | 189.30 |
| | | 3/28/85 | 40 | 983.05 |
| | | | | (960.00) |
| 8 | 5/13/85 | 1/10/85 reinvoiced 2/28/85 | 74 | 4,603.56 |
| | | 3/18/85 | 55 | 524.52 |
| | | 4/03/85 | 40 | 2,781.00 |
| | | 4/08/85 | 35 | 168.96 |
| | | 4/08/85 | 35 | 5,897.76 |
| | | | | (41.88) |
| 9 | 5/21/85 | 1/11/85 | 130 | 53.76 |
| 10 | 6/05/85 | 4/19/85 | 41 | 485.28 |
| | | 4/19/85 | 46 | 830.61 |
| | | | – | (1,032.00) |

Between May 9 and June 5, 1985, Writing Sales paid five checks to Cardinal Products totalling $24,663.13.

1. Although the above invoices total $26,697.01, a credit in the amount of $2,033.88 was given to Writing Sales.

2. Section 547(b) of the Code states the following:

Except as provided in subsection (c) of this section, the trustee may avoid any transfer of an interest of the debtor in property—
(1) to or for the benefit of a creditor;

## DISCUSSION

Five elements must be proven to establish a voidable preference under 11 U.S.C. § 547(b).[2] In this case the only dispute

(2) for or on account of an antecedent debt owed by the debtor before such transfer was made;
(3) made while the debtor was insolvent;
(4) made—
(A) on or within 90 days before the date of the filing of the petition; or
(B) between ninety days and one year before the date of the filing of the petition, if

regarding these elements is whether the payments received by Cardinal were in satisfaction of antecedent debts.

Section 101(11) of the Code defines "debt" as a "liability on a claim." "Antecedent debt," although not defined in the Code "may be described as [a] pre-existing or prior debt.... Therefore, any 'prior debt which is reduced or discharged as a result of payment within 90 days of bankruptcy is an antecedent debt.'" *Henderson v. Allred (In re Western World Funding, Inc.),* 54 B.R. 470, 476 (Bankr.D. Nev.1985) (citations omitted).

The evidence in this case indicates that Cardinal invoiced Writing Sales the day after shipping merchandise and that the invoices pertaining to the five payments in question also contained a statement that they were due "net on presentation." Although the term "net upon presentation" suggests a cash transaction, the fact that Cardinal shipped goods before payment was made on previous invoices leads the court to conclude that these were credit transactions. Therefore, the debtor in possession has proven that a voidable preference exists under 11 U.S.C. § 547(b).

Cardinal has alleged an affirmative defense under 11 U.S.C. § 547(c)(2). A preference cannot be avoided under this section of the Code if the following is established:

> (2) to the extent that such transfer was—
>> (A) in payment of a debt incurred by the debtor in the ordinary course of business or financial affairs of the debtor and the transferee;
>> (B) made in the ordinary course of business or financial affairs of the debtor and the transferee; and
>> (C) made according to ordinary business terms.

11 U.S.C. § 547(c)(2). Hence, it must be decided whether Writing Sales' payments to Cardinal were made in the ordinary course of business.

In determining whether a payment is made in the ordinary course of business, a court should consider the "prior course of dealing between the parties, the amount of the payment, the timing of the payment and the circumstances surrounding the payment." *Newton v. Ed's Supply Co. (In re White),* 58 B.R. 266, 269 (Bankr.E.D. Tenn.1986). The legislative history of 11 U.S.C. § 547(c)(2) states that the purpose of the ordinary course of business preference recovery exception is to " 'leave undisturbed normal financial relations, because it does not detract from the general policy of the preference section to discourage unusual action by either the debtor or his creditors during the debtor's slide into bankruptcy.'" *Id.* citing H.R.Rep. No. 595, 95th Cong., 1st Sess. 373, *reprinted in* 1978 U.S.Code Cong. & Admin.News pp. 5787, 5963, 6329 (citations omitted).

The testimony in this case was that it took Writing Sales 58 days to pay an invoice. It was also the practice between Cardinal and Writing Sales to recognize that payment occurred on the date the check was honored. *See also* Wis.Stat. § 403.603 (1985–86). Although the invoices contained a statement that they were due "net on presentation," both parties agree that there was in fact a credit arrangement.

Of the 14 invoices Writing Sales received from Cardinal, six were paid from 72 days to 130 days after issuance. These invoices were not paid in the time frame that was usually observed by Writing Sales and Cardinal and, in fact, were well beyond the 58 day average. These six payments totalling $14,836.53 are therefore preferential. The eight payments totalling $9,826.61 are not preferential because they were made in accordance with the parties' customary practice.

For the reasons stated, which constitute the Court's findings of fact and conclusions

---

such creditor at the time of such transfer was an insider; and
(5) that enables such creditor to receive more than such creditor would receive if—
  (A) the case were a case under chapter 7 of this title;

(B) the transfer had not been made; and
(C) such creditor received payment of such debt to the extent provided by the provisions of this title.

of law in accordance with Bankruptcy Rule 7052, Writing Sales is entitled to judgment in the sum of $14,836.53 [3].

**3.** This includes the $53.76 payment stipulated to by Cardinal as a preferential payment.